757 So.2d 920 (2000)
Crystal KELLER
v.
Lincoln CASE d/b/a Hunter's Bluff Farms.
No. 99 CA 0424.
Court of Appeal of Louisiana, First Circuit.
March 31, 2000.
Rehearing Denied May 25, 2000.
*921 Terry A. Bell, Darryl J. Carimi, Metairie, for Plaintiff-Appellant Crystal Keller.
Walter R. Krousel, Jr., Karl E. Krousel, Baton Rouge, for Defendant-Appellee American Banker's Insurance Company of Florida.
Before: CARTER and PETTIGREW, JJ., and CLAIBORNE,[1] J. Pro Tem.
PETTIGREW, J.
In this case, the plaintiff filed suit seeking to recover damages for the loss of her thoroughbred horse. The trial court granted summary judgment in favor of the defendant, American Banker's Insurance Company of Florida, and the plaintiffs suit was dismissed with prejudice.[2] Plaintiff subsequently filed the instant appeal. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
The plaintiff, Crystal Keller, was the owner of a thoroughbred horse named Ulysses S. Grant. In April 1996, she began boarding her horse at Hunter's Bluff Farms. The horse died in August 1996, allegedly as the result of the negligence of the employees of Hunter's Bluff Farms. Ms. Keller originally filed suit against Lincoln Case d/b/a Hunter's Bluff Farms for the loss of the horse. The petition was subsequently amended to name HAL Investments, Inc. d/b/a Hunter's Bluff Farms ("Hunter's Bluff") as the correct defendant, and Lincoln Case was dismissed from the suit without prejudice. After learning the identity of Hunter's Bluffs liability insurer, the petition was again amended to add American Banker's Insurance Company of Florida ("American Banker's") as a defendant to the suit.
*922 American Banker's moved for summary judgment alleging that it was entitled to judgment as a matter of law because there was "no genuine issue of material fact regarding the contract of insurance, its exclusions or its application to the facts as alleged in the Petition." American Banker's noted that the policy at issue "clearly excludes coverage for claims arising out of property damage to property which is in the insured's care, custody, or control." After hearing arguments of counsel and reviewing the memoranda and evidence submitted, the trial court granted summary judgment in favor of American Banker's. Ms. Keller has appealed this judgment, alleging that the trial court erred in finding that her horse was in the care, custody or control of Hunter's Bluff and in holding that the exclusion in the policy at issue was applicable.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966 B. Summary judgment is favored and "is designed to secure the just, speedy, and inexpensive determination of every action." La.Code Civ. P. art. 966 A(2).
The burden of proof on a motion for summary judgment is set forth in La.Code Civ. P. art. 966 C(2):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
The initial burden of proof remains with the mover and is not shifted to the non-moving party until the mover has properly supported the motion and carried the initial burden of proof. Only then must the non-moving party "submit evidence showing the existence of specific facts establishing a genuine issue of material fact." See Scott v. McDaniel, 96-1509, p. 5 (La.App. 1 Cir. 5/9/97), 694 So.2d 1189, 1191-92, writ denied, 97-1551 (La.9/26/97), 701 So.2d 991. If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La.Code Civ. P. arts. 966 and 967.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Sanders, 96-1751 at 7, 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528.
The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion for summary judgment. Frost v. David, 95-0839, p. 4 (La.App. 1 Cir. 5/10/96), 673 So.2d 340, 343. Summary *923 judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480, p. 2 (La.4/11/94), 634 So.2d 1180, 1183.

DISCUSSION
In Frost, supra, we succinctly set forth the rules to be employed in interpreting an insurance policy.
An insurance policy is a contract between the parties and should be construed according to general rules of contract interpretation. The extent of coverage provided by a policy is determined by the parties' intent, as reflected by the words of the policy. Where the policy language is clear, unambiguous, and expressive of the parties' intent, the agreement must be enforced as written.
The purpose of liability insurance is to provide the insured with protection from damage claims. Therefore, policies should be construed to effect rather than to deny coverage. Provisions which seek to narrow the obligation of the insurer are to be strictly construed against the insurer. If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation favoring coverage must be applied.
However, subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner as long as the limitations do not conflict with statutory provisions or public policy. The strict construction rule does not authorize the court to create a new contract or to alter the terms of a contract which are expressed with sufficient clearness to convey the plain meaning of the parties.
Frost, 95-0839 at 4-5, 673 So.2d at 343 (citations omitted). Further, when the words of a contract are clear, explicit, and lead to no absurd consequences, the contract must be interpreted within its "four corners" and cannot be explained or contradicted by parol evidence. La. Civ.Code art. 1848; Peterson v. Schimek, 98-1712, p. 9 (La.3/2/99), 729 So.2d 1024, 1031.
With these principles in mind, we now interpret the insurance policy at issue herein. The following language is found in the definition section of the policy:
13. Property DamageThis means:
a. physical injury or destruction of tangible property; or
b. the loss of use of tangible property whether or not it is physically damaged.
Further, in a section entitled ADDITIONAL EXCLUSIONS THAT APPLY TO PROPERTY DAMAGE LIABILITY, the following pertinent language appears:
4. We do not pay for property damage to property in the care, custody or control of an insured. This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.
Also, the declarations page of the policy is stamped with the following language:

IMPORTANT NOTICE

THIS POLICY EXCLUDES

COVERAGE FOR

CARE, CUSTODY OR CONTROL
After a thorough review of this policy, we are satisfied that the exclusionary language in the policy is "clear, unambiguous, and expressive of the parties' intent" such that the policy must be enforced as written. See Frost, supra. The policy clearly excludes coverage for property damage claims for property that is in Hunter's Bluff's care, custody or control. Having determined that the exclusion is clear and unambiguous, we must now determine whether Ms. Keller's horse was in the care, custody and control of Hunter's Bluff *924 so as to bring her claim for damages within this exclusion.
As correctly noted by Hunter's Bluff in brief, Ms. Keller alleges in her petition for damages that her horse "became ill while in defendant's custody and care." Further, according to the BOARDER INFORMATION SHEET that was signed by Ms. Keller, Hunter's Bluff was instructed as to the horse's feeding schedule, including what the horse was to be fed and how often. It is obvious that Ms. Keller left her horse at Hunter's Bluff with the intention and expectation that Hunter's Bluff would care for the horse in her absence. Common sense dictates that the horse was in the care and custody of Hunter's Bluff at the time in question. Thus, Ms. Keller's claim for damages due to her loss of her investment, loss of her gear and appurtenances, and loss of increase in value of the horse clearly falls within the policy exclusion regarding property damage to property that is in Hunter's Bluffs care, custody or control. The trial court was correct in granting summary judgment in favor of Hunter's Bluff in this regard. However, because Ms. Keller's suit goes beyond a claim for property damages, our inquiry cannot end here.
In addition to the property damages sought by Ms. Keller in connection with the death of her horse, Ms. Keller also made a claim for personal injury damages including the "extreme mental anguish, pain and suffering, distress, [and] anxiety" she suffered as a result of the negligence of the employees of Hunter's Bluff. As these damages do not fall within "property damages" as defined in the policy, the exclusion in question does not operate to deny Ms. Keller the right to recover same.
We note that an award for mental anguish as a result of damage to property is normally permitted in four instances: (1) property damaged by an intentional or illegal act; (2) property damaged by acts for which the tortfeasor will be strictly or absolutely liable; (3) property damaged by acts constituting a continuous nuisance; and (4) property damaged at a time which the owner thereof is present or situated nearby and the owner experiences trauma as a result. Louisiana Farm Bureau Mutual Insurance Company v. Dunn, 484 So.2d 853, 856 (La.App. 1 Cir.1986).
As the present matter was summarily dismissed by the trial court on the issue of coverage, Ms. Keller has not had an opportunity to present any evidence regarding the mental anguish damages she has suffered as a result of this incident. Thus, we reverse the trial court's judgment insofar as it dismisses Ms. Keller's claim for personal injuries suffered due to the alleged negligence of the Hunter's Bluff employees, and remand this matter to the trial court for further proceedings consistent with this opinion.

CONCLUSION
For the above reasons, we affirm the trial court's granting of summary judgment in favor of American Banker's, dismissing Ms. Keller's claim for property damages suffered in connection with the death of her horse. We reverse the trial court's dismissal of Ms. Keller's claim as against American Banker's for personal injuries suffered as a result of the alleged negligence of Hunter's Bluff employees. We remand this matter to the trial court for further proceedings consistent with this opinion. Costs associated with this appeal are assessed against plaintiff-appellant, Crystal Keller.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] HAL Investments, Inc. d/b/a Hunter's Bluff Farms also filed a motion for summary judgment. This motion was denied by the trial court and is not an issue in the instant appeal.